IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| **NORTHERN BOTTLING CO., INC.,** | ) | Case No. 4:15-CV-00133 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Judge Daniel L. Hovland** |
| | ) | **Magistrate Judge Charles S. Miller, Jr.** |
| **PEPSICO, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### REPLY MEMORANDUM IN SUPPORT OF
### PEPSICO, INC.'S MOTION FOR PROTECTIVE ORDER
### REGARDING PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICE

There should be no genuine dispute regarding the appropriate scope of discovery in this case. As Northern's Response Brief acknowledges, its claim is based on "allegations that PepsiCo has failed … to prevent the transshipment of products *into Northern's exclusive territory*." Dkt. 64 at 2 (emphasis added). There should also be no genuine dispute that PepsiCo has produced ample discovery directly responsive to this claim. Among other things, PepsiCo has produced documents relating to its Transshipment Enforcement Policy ("TEP") and administration thereof as well as a full day of deposition testimony by PepsiCo's TEP administrator regarding these subjects and PepsiCo's response to transshipments into Northern's territory. Moreover, notwithstanding the duplicative nature of Topics 1, 2 and 8 of the Rule 30(b)(6) Notice, PepsiCo has agreed to present a witness to testify a second time about the general administration, documentation, amendment and modification of the TEP and related policies as well as specific enforcement actions that PepsiCo has undertaken to address transshipments in Northern's territory since 2012. However, PepsiCo objects to Northern's attempt to obtain discovery relating to PepsiCo's activities with respect to transshipments in *other* bottler territories and reaching as far back as 2003 because such patently overbroad discovery is not relevant or proportional to the needs of this case.

Northern's Response to PepsiCo's Motion offers no persuasive argument that the sweeping discovery it seeks is relevant to its claims. Nor does Northern cite *any* legal authority to support its broad requests. Instead, Northern suggests that it has a right to this discovery because PepsiCo intends to defend itself against Northern's claims by relying on PepsiCo's responses to transshipments into other bottlers' territories. That is a blatant mischaracterization of PepsiCo's defenses in this case and cannot serve as a basis to expand the scope of discovery far beyond Northern's legitimate needs.

## ARGUMENT

### I. PepsiCo Has Agreed to Provide Testimony about Its Transshipment Policies.

As noted above, PepsiCo has never refused to provide "general[]" testimony "on the administration of the TEP" and related transshipment issues. Indeed, PepsiCo produced copies of the TEP, the Pepsi Beverages Company ("PBC") Transshipment Policy for Employees, and other documents relating to the transshipment claims process. And Darrin Morris, the PepsiCo employee responsible for transshipment enforcement between 2011 and 2016, testified at length about the administration, documentation, amendment or modification of PepsiCo's transshipment policies and related procedures during his tenure. *See* Dkt. 59-13 at 16-17, 93-94, 120-22, 132-36, 140, and 143-45. Morris also testified about PepsiCo's efforts to prevent transshipments into Northern's territory. *Id.* at 168-172, 219-223. Furthermore, as PepsiCo noted in its opening brief, it has already agreed to present a corporate representative to testify for a second time about these same matters for the period from 2012 to the present in response to Topics 1, 2 and 8 of the Rule 30(b)(6) Notice. Dkt. 59-21 at 2.

### II. Discovery Regarding Transshipments Into Other Bottlers' Territories Is Irrelevant.

The portions of Topics 1, 2 and 8 that are in dispute, however, seek testimony about specific transshipment enforcement activity and transshipment-related lawsuits relating to every *other*

2

bottler's territory in the United States.[1] These topics are not, as Northern claims, "expressly crafted to elicit relevant information." Dkt. 64 at 12. Rather, they seek testimony about: (1) "[a]ll aspects" of the TEP, including "the amount of fines imposed by name of payee" nationwide since 2003; (2) any "actions" taken by PepsiCo "for the purpose of preventing transshipment" in any U.S. bottler territory since 2010; and (3) any "litigation initiated by PepsiCo … to enforce a contractual restriction regarding sales of Pepsi[] soft drink products outside of an exclusive territory" since 2010. Dkt. 59-1. These Topics would require PepsiCo to prepare a witness to answer questions about:

- The transshipping fines assessed against *every* bottler anywhere in the United States in every year since 2003;
- The amount of transshipped product in *every* bottler's territory in the United States in every year since 2003;
- All actions taken to halt transshipment in *any* bottler territory in the United States in every year since 2010;
- All disciplinary actions or reductions in compensation for any PepsiCo employee stemming from any incident of transshipping *anywhere* in the United States since 2010; and
- All notices or warnings given, or lawsuits initiated, by PepsiCo relating to any transshipping incident *anywhere* in the United States since 2010.

Not surprisingly, Northern's Response offers no justification for such broad testimonial requests.

### A.   Northern cites no authority supporting its broad requests.

Northern has not cited a *single case* to refute the many authorities PepsiCo presented in which courts foreclosed parties from obtaining "unfettered, company-wide discovery" when the events at issue affect just one territory. Dkt. 59 at 9-10. This failure alone provides grounds for the Court to grant PepsiCo's motion. *See United States v. Lester*, 283 F. App'x 421, 423 (8th Cir. 2008) (holding argument waived where party "cite[d] no case law"); *Crews v. Sara Lee Corp.*,

---

[1] In further support of its Motion for Protective Order, PepsiCo hereby incorporates the arguments set forth in its Opposition to Northern's Motion to Compel (Dkts. 65 and 66).

2009 WL 909236, at *1 (N.D. Iowa Mar. 31, 2009) (granting motion to dismiss count where "[p]laintiffs fail[ed] to discuss or cite any legal authority to shed doubt on [d]efendants' well-briefed argument").

### B. PepsiCo's Responses to Transshipments Into Other Bottlers' Territories Are Not Relevant to Its Defenses or Northern's Claims in This Case.

Notwithstanding the absence of any legal support, Northern remarkably argues that a general description of the TEP in PepsiCo's Answer justifies its demand to take nationwide discovery of PepsiCo's transshipment enforcement activities over a period of almost 15 years. Dkt. 64 at 5-6. That argument is baseless. As Northern's Response concedes, PepsiCo's defenses focus on its efforts to address transshipping into Northern's territory and upon Northern's own conduct with respect to the four customers who purchased transshipped product. *See id.* at 4 ("PepsiCo's affirmative defenses blame Northern."). Indeed, PepsiCo's statement about its "neutral[]" administration of the TEP in the Answer was made in the context of denying Northern's allegation that PepsiCo was failing to prevent transshipments into Northern's territory. *See* Dkt. 65 at 16; Dkt. 12 at 5. Since the phrase simply refers to PepsiCo's impartial assessment of fines for transshipment into Northern's territory against any source bottler, whether independent or PepsiCo-owned, Dkt. 12 at 5, Northern cannot use it to justify a sprawling fishing expedition into the circumstances of transshipment enforcement activities involving the territories of every other bottler in the system over the course of almost 15 years.

Likewise, Northern's reliance on its own claims to justify such broad discovery is equally meritless. Significantly, Northern offers no explanation for how PepsiCo's enforcement activity outside of Northern's territory is pertinent to its breach of contract claim against PepsiCo. Instead, Northern focuses on its barely-pled claims for punitive damages and injunctive relief. Dkt. 64 at 2, 9; Dkt. 1 ¶¶ 30-34. However, these claims for relief cannot support the wide-ranging deposition

topics that Northern seeks to explore. First, punitive damages are not available in a lawsuit that is, by Northern's own admission, about whether PepsiCo "has satisfied its obligations to Northern … under the terms of [the EBAs] between the two companies" (Dkt. 52-2 at 2). *See A&R Fugleberg Farm, Inc. v. Triangle AG, LLC*, 828 F. Supp. 2d 1045, 1050 (D.N.D. 2011) ("Because the issue is a simple alleged breach of a term of an oral contract with no additional independent tortious acts, punitive damages are not recoverable."). Nor has Northern even hinted at any "irreparable harm" it has suffered that would support its request for injunctive relief. *See Tristar Sporting Arms, Ltd. v. ATA Arms*, 2007 WL 1101182, at *5 (W.D. Mo. Apr. 11, 2007) (denying injunctive relief in breach of contract suit based on lack of irreparable harm because if defendant "breached a contract … those damages can be calculated"); *Alternative Med. and Pharmacy, Inc. v. Express Scripts, Inc.*, 2014 WL 4988199, at *8 (E.D. Mo. Oct. 7, 2014) (denying injunction in "a standard breach of contract case" because plaintiff's "claims of potential lost customers and revenue … d[id] not constitute irreparable harm").

Moreover, Northern offers no reasonable explanation for *how* PepsiCo's responses to transshipments into other bottlers' territories would be relevant to those claims even if they were viable. Northern does not even try to link its Rule 30(b)(6) Topics to its punitive damages claim. For the injunction claim, Northern argues only that PepsiCo's activities in other territories may show "anything else that PepsiCo could be doing in Northern's territory to prevent transshipment." Dkt. 64 at 9. But Northern's belief that there is some unidentified "something" PepsiCo could be doing to stop transshipment into Northern's territory, and the unsupported suspicions of its counsel that PepsiCo might be doing this unidentified "something" in some other bottler's territory, are wholly insufficient to justify Northern's proposed fishing expedition into all bottler territories. *See*

*Gutierrez v. State Farm Lloyds*, 2015 WL 13188353, at *5 (S.D. Tex. Jan. 22, 2015) (denying discovery designed to "substantiate [p]laintiffs' counsel's suspicions" as a "'fishing expedition'").

### III. Nationwide Discovery Is Not Proportional to the Needs of the Case.

Northern also fails to show its requests for nationwide enforcement activities and lawsuits are proportional to the needs of the case.[2] Northern argues that Rule 30(b)(6) testimony about all transshipment fines anywhere in the United States since 2003 "would be no burden" because PepsiCo could obtain the data in spreadsheet form. Dkt. 64 at 8. But Northern's Rule 30(b)(6) Notice goes beyond mere production of a spreadsheet. Instead, it would require a witness to obtain a mountain of data for all transshipments nationwide since 2003, familiarize him- or herself with that data, and answer questions about any of the transshipments and the circumstances under which they occurred. Dkt. 59-1. Northern also asks for testimony about any actions PepsiCo has taken in response to transshipments anywhere in the United States since 2010. Gathering this information and preparing a witness to testify competently on such broad subjects would undeniably impose a significant and unjustified burden on PepsiCo. Dkt. 59 at 12-13.

PepsiCo should not be forced to shoulder this heavy burden (or any burden) because, as PepsiCo showed in its opening brief and its response to Northern's Motion to Compel (Dkt. 66), information about transshipment enforcement activity and transshipment-related lawsuits outside of Northern's territory is simply not relevant to Northern's claims. *See Gutierrez*, 2015 WL 13188353, at *11 (denying motion to compel where requested "information [wa]s not relevant at all to the issues" and consequently "any burden incurred by [d]efendants in producing that information … is too much"); *Arrowpac Inc. v. Sea Star Line, LLC*, 2014 WL 12618327, at *2

---

[2] Notably, Northern's proportionality argument did not cite a single case to challenge PepsiCo's many authorities (Dkt. 59 at 12) holding that discovery of territories unrelated to a plaintiff's claims is not proportional. *See supra* at 3-4.

(M.D. Fla. Jan. 31, 2014) ("Defendants should not be required to produce irrelevant documents regardless of any lack of burden to them.") (collecting cases).

Furthermore, Northern is wrong to suggest that the potential claims of "other independent bottlers" that have experienced "transshipment in their exclusive territories" but who are not parties in this litigation should be considered by the Court when evaluating relevance and proportionality. See Fed. R. Civ. P. 26(b)(1), Advisory Committee Note to 2000 Amendment ("[P]arties … have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"); *Gutierrez*, 2015 WL 13188353, at *9 ("Plaintiffs unabashedly seek information laying the groundwork for claims far outside the scope of this case. The discovery process cannot be used for this purpose.").

## IV. Discovery from Before 2012 Is Not Relevant or Proportional to the Needs of the Case.

Northern argues that it needs information about fees imposed for transshipment everywhere in the United States since 2003 so that it can compare PepsiCo's "administration of the TEP" before and after its purchase of bottling operations in 2010. Dkt. 64 at 7. But Northern's claims are based on transshipment in "late 2014/early 2015"; only a total of ▮ cases of Pepsi CSDs were transshipped into Northern's territory during the preceding three years, and Northern experienced "virtually no 'transshipping'" before 2010. Dkt. 52-2 at 5-6; Dkt. 65 at 18. The amount of transshipping fines imposed prior to 2012 – much less back to 2003 – has no logical relationship to whether PepsiCo has satisfied its purported duties to Northern under the EBAs since 2015.

## CONCLUSION

For the foregoing reasons, PepsiCo respectfully requests that the Court grant its Motion for Protective Order and limit the scope of Plaintiff's Rule 30(b)(6) Notice Topics 1, 2 and 8 to subjects relating to transshipments into Northern's territory between 2012 and the present.

7

Dated:  August 30, 2017              */s/ Thomas B. Quinn*
                                                      Thomas B. Quinn (*pro hac vice*)
                                                      Sondra A. Hemeryck (*pro hac vice*)
                                                      Kevin Reidy (*pro hac vice*)
                                                      RILEY SAFER HOLMES & CANCILA LLP
                                                      Three First National Plaza
                                                      70 West Madison Street, Suite 2900
                                                      Chicago, IL 60602
                                                      (312) 471-8700
                                                      tquinn@rshc-law.com
                                                      shemeryck@rshc-law.com
                                                      kreidy@rshc-law.com

                                                      Patrick J. Ward
                                                      John E. Ward
                                                      ZUGER KIRMIS & SMITH
                                                      316 North 5th Street
                                                      P.O. Box 1695
                                                      Bismarck, ND 58502-1695
                                                      pward@zkslaw.com
                                                      jward@zkslaw.com

                                                      *Attorneys for Defendant PepsiCo, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2017, the following document:

REPLY MEMORANDUM IN SUPPORT OF PEPSICO, INC.'S MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICE

was filed via CM/ECF which automatically generated notice of this filing to the following counsel of record:

| | |
|---|---|
| James Ragain | Michelle M. Sullivan |
| RAGAIN & COOK, PC | SULLIVAN MILLER LAW PLLC |
| 3936 Avenue B, Suite A-2 | 3860 Avenue B, Suite C East |
| Billings, MT 59102 | Billings, MT 59102 |
| (406) 651-8888 | (406) 403-7066 |
| jim@ragaincook.com | michelle.sullivan@sullivanmiller.com |

Rodney Pagel
PAGEL WEIKUM, PLLP
1715 Burnt Boat Dr., Madison Ste
Bismarck, ND  58503
(701) 250-1369
rpagel@pagelweikum.com

Patrick J. Ward
John E. Ward
ZUGER KIRMIS & SMITH
316 North 5th Street
P.O. Box 1695
Bismarck, ND 58502-1695
(701) 223-2711
(Telephone)
pward@zkslaw.com
jward@zkslaw.com

Dated this 30th day of August, 2017.

*/s/ Thomas B. Quinn*
Thomas B. Quinn